## J. A. DALY, Respondent, v. MAMIE WILBUR, Appellant.

Springfield Court of Appeals, January 14, 1922.

1. **CORPORATIONS: Sole Stockholder Held Personally Liable on Contract Requiring Corporation to Pay Signed by Her.** The owner of all the stock of a corporation is personally liable on a contract requiring the corporation to pay a stated sum of money, but which was signed by the stockholder alone in her individual capacity.

2. ————: **Contract Made by Buyer in Connection with Sale of Stock Held Sufficiently Definite to be Enforced.** A contract made by the buyer in connection with the sale of all the stock of a corporation, which provided that, if a lease held by the corporation should be extended on a satisfactory basis, the corporation would pay to the sellers of the stock $1000 in addition to the price paid at the time, was sufficiently definite to be enforced.

3. ————: **Buyer Who Accepted Different Lease Cannot Object That it Was not Equivalent to Extension on Satisfactory Basis.** Where the buyer of all the stock in a corporation agreed that it would pay the sellers an additional sum for the stock in case a lease to the corporation was extended on a satisfactory basis, and thereafter, as sole stockholder, accepted a new lease on different terms she cannot escape liability thereon for the extra payment on the ground that the new lease was not what the contract provided for.

4. **WITNESSES: Assignment of Contract in Suit Held Contract in Issue Within the Statute.** In an action by an assignee to enforce the assigned contract, where the defendant denied the allegation of the assignment, the contract of assignment between the assignee and the deceased assignor was the contract in issue within Revised Statutes 1919, section 5410, excluding testimony by a party as to such contract.

5. ————: **Assignee Disqualified to Testify to Assignment by Deceased Assignor of Contract with Defendant.** In an action for breach of contract made by defendant with plaintiff and two others, where plaintiff's allegation that the others had assigned their interest to him was denied by defendant, and one of the alleged assignors was dead, the plaintiff was not a competent witness to testify to the assignment of the contract by the deceased assignor under Revised Statutes 1919, section 5410.

6. **DESCENT AND DISTRIBUTION: Action by Assignee of Heirs not Maintainable Without Showing Administration and Payment of Decedent's Debts.** In an action for breach of contract between plaintiff, and two others on one side, an assignment to plaintiff of the interest of one of his associates, now deceased, executed by the heirs of decedent, is unavailing in the absence of a showing that the estate had been administered and all debts paid.

7. **LOST INSTRUMENTS: Oral Evidence of Assignment Should Disclose Contents.** Oral evidence to establish an assignment originally made in writing, but which had been lost, should disclose the contents of the instrument; mere testimony that it was an assignment being insufficient. (FARRINGTON, J., dissenting).

Appeal from Jasper County Circuit Court.—*Hon. O. S. Barton*, Special Judge.

REVERSED AND REMANDED.

*Owen & Davis* and *Hiram W. Currey* for appellant.

(1)   The provision to pay $1000 if the Vogy lease was extended, was, and is a true precedent condition, and the acceptance by the corporation of a lease on the Vogy chats, after refusal of the American Lead & Zinc Company to extend the lease containing different rentals, and for shorter time (in the absence of a new contract of waiver on sufficient consideration) is not the happening of the uncertain event, which conditions plain-

tiff's right to recover and this is true even though the court should treat defendant as the corporation lessee. Cole v. Harvey, 120 N. W. 97; Saw Mill Co. v. Lumber Co., 44 So. 100; Miller v. Crusel, 65 So. 873; Rolins v. Denver Club, 96 Pac. 188; Adams v. R. Y. Co., 61 S. E. 341; Chapman v. Ferguson, 152 Mo. App. 84. (2) The corporation, though it did not sign the contract, would have been liable had the lease executed to it by the American Zinc, Lead & Smelting Company on the Vogy chat pile been, by its terms, satisfactory to the defendant, and if the corporation was not bound by reason of the failure to procure such satisfactory lease, the defendant was not bound. Cedar Rapids Company v. Railroad, 124 N. W. 323; Henderson v. Henderson, 114 N. W. 178; Hinote v. Brigman, 33 So. 303; Bowen v. Coal Company, 182 S. W. 635.

*McReynolds & McReynolds* and *H. W. Timmonds* for respondent.

(1) Thus, though one party in interest be dead, the other party will be a competent witness, if the contract in issue was negotiated by an agent of the deceased who is living at the time of the trial. Banking House v. Rood, 132 Mo. 256, 262; Miller v. Wilson, 126 Mo. 54; Griffin v. Nicholas, 224 Mo. 275. (2) As long as there is no issue of veracity which might arise between the witness and the deceased, the cloak of the statute does not apply. This distinction is clearly pointed out in the case of Scott v. Brenton, an opinion by the Supreme Court of Iowa, reported in the 150 N. W. page 56, where testimony as to the contents of a lost instrument with a decedent, was held competent, where it does not appear except by inference that the knowledge of the contents to which the witness testified, as acquired at the time of the execution. (3) The plaintiff is a competent witness in an action brought against the executors of her deceased husband, to recover possession of a bond and mortgage which had been found among his papers, and to which she claimed title by gift from

him, to testfy as to her possession of the bond and mortgage during the lifetime of deceased. Taber v. Willets, 44 Hun, 346. But see Richardson v. Emmett, 170 N. Y. 412, 63 N. E. 440, set out above which practically overrules this case.

COX, P. J.—Action for breach of contract, trial by court, judgment for plaintiff and defendant has appealed.

In the year 1915, J. A. Daly, S. A. Wight and L. A. Johnson were the owners of all the stock of the Odell-Daly Material Company, a corporation, engaged in the business of handling chats, gravel and sand that were piled up near mines in Jasper county. They secured from the owners of land or mining leases the execution of leases to their corporation by which they were given the right to load and ship chats, sand, and other waste material from the mines and for which a compensation would be paid. This corporation had a lease of the character just described on what was known as the Vogy mine which expired April 3, 1916. On August 7, 1915, the parties aforesaid sold all of the stock in the Odell-Daly Material Company to defendant for the sum of $9000 and at that time the contract sued on in this case was executed which provided that on certain conditions $1000 more should be paid. The material parts of this contract are as follows:

"It is hereby agreed that in case parties owning what is known as the Vogy mine or loading station shall extend their lease on satisfactory basis from the third day of April, 1916, at which time the present lease with the Odell-Daly Material Company will expire, and the Odell-Daly Material Company shall pay the said J. A. Daly, S. A. Wight, and L. A. Johnson the sum of One Thousand Dollars in addition to the said Nine Thousand Dollars ($9000), said extension to be secured from the owners of said land on or before the third day of April, 1916.

"MAMIE R. WILBUR,
"By GEORGE D. FARRIS, ATTY.

The plaintiff, Daly, alleges in his petition that the extension called for in the contract had been procured and that he had become the owner by assignment of the interests of Johnson and Wight in the contract and asked judgment for $1000.

The answer denies personal liability of defendant on the contract. Denies that the contract is enforceable because it is so vague and uncertain that its meaning cannot be determined. Denies that any assignment of said contract had been made to plaintiff by Wight or Johnson. Also alleged fraud in the sale of stock in the corporation to defendant and asked damages therefor.

No extension of the lease on the Vogy mine or loading station held by the corporation at the time of the execution of the contract sued on was ever secured but a new lease dated April 3, 1916, and expiring March 30, 1917, was secured. This lease was made to the Odell-Daly Material Company, the corporation in which defendant then owned all the stock and was signed on part of the lessee by Dora Dobson, Sec., and J. G. Wilbur, Gen. Mgr. J. G. Wilbur had represented defendant in the transaction from the beginning. This new lease had some provisions that were substantially different from the former lease but defendant accepted it and shipped material under it for the full time provided in it.

We do not agree with defendant's contention that defendant was not personally obligated by the contract on which suit was brought. While the contract provided that if the extension of the lease was secured, the Odell-Daly Material Company would pay, yet it was signed by her alone and since she was the owner of all the stock in the corporation, we hold that the contract was her individual contract.

Neither do we think that the contract is so indefinite in its terms as to be unenforceable. By giving the language of the contract a fair interpretation, it is clear to us that defendant agreed that if the extension of the lease therein provided should be secured, she would pay $1000 therefor.

It is next contended that the contract calls for an extension of the old lease and that it could not be complied with by securing a new lease with provisions therein materially different from the old lease. Generally speaking, that proposition is correct and had defendant stood upon it and refused to accept the new lease her position would be sound, but she is now estopped from asserting that defense because she accepted the new lease and operated under it and secured all its benefits and hence she cannot now be heard to say that it is not what the contract provided she should have.

It is also contended that the provision in the contract that the extension of the lease to be secured was to be "on satisfactory basis" meant that it should be satisfactory to defendant and that the evidence shows that the lease secured was not satisfactory to defendant and therefore she is not bound. Without deciding whether or not defendant is right in her contention as to the meaning of the word "on satisfactory basis" used in this contract, we hold that by keeping the new lease, she has placed herself in the position of agreeing that it was satisfactory for if it were not, she should not have accepted it.

The most serious question in this case is as to the competency of plaintiff Daly as a witness to testify that Wight, one of the obligees in the contract sued upon had assigned his interest in the contract to plaintiff. Wight was dead at the time of the trial and plaintiff was permitted over the objection of defendant to testify that he had received from Wight a written assignment of his interest in the contract sued on. In this contract defendant had agreed that if the lease on the Vogy mine should be extended she would pay to plaintiff, Johnson and Wight, $1000. Plaintiff had a written assignment from Johnson transferring his interest in this contract. Plaintiff also claimed that he had a written assignment from Wight executed by him in his lifetime but that it was then lost. Plaintiff's testimony as to this assignment from Wight was objected to on the ground that Wight

being dead, the statute made plaintiff incompetent to testify in relation to any contract of assignment from Wight to him. This assignment was pleaded by plaintiff in his petition and denied by the answer of defendant and hence as to the interest of Wight in the contract sued upon, it was necessary for plaintiff to prove the assignment from Wight to himself in order to recover.

The statute relied on by defendant as rendering plaintiff incompetent is section 5410, Revised Statutes 1919, which after declaring that no person shall be disqualified as a witness by reason of his interest as a party or otherwise has the following proviso: ''Provided: that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead or is shown to the court to be insane, the other party to such contract or cause of action shall not be permitted to testify either in his own favor or in favor of any party to the action claiming under him . . .'' This statute has been before the Supreme and Appellate Courts of this State for construction a great many times as have somewhat similar statutes in other states and the decisions do not seem to be at all harmonious. In Jones's Commentaries on the Law of Evidence, a very eminent authority, at sec. 774, in commenting upon the statutes of the various States and the decisions of the courts construing them, we find this statement: ''While there has been a desire to make common exceptions, the variations in the statutes are so marked and the conflicting decisions so irreconcilable that the lawyer can only take one State at a time and hope to have very little guidance from decisions out of that State.'' Our examination of authorities from other States has convinced us of the correctness of that author's statement. The courts of our own State in passing upon the varying shades of difference in the facts of the cases under review have not always seemed to be in entire harmony though most of the apparent differences may be accounted for by the different state of facts to which each decision is applied.

The case of Bradley v. West, 68 Mo. 69, appears to support the contention that plaintiff was a competent witness in this case but that case was overruled in Chapman v. Dougherty, 87 Mo. 617. In the latter case, at page 626, it is said: "The disability of the original parties to the contract or cause of action in issue and on trial where the other party is dead and the survivor is a party to the suit is co-extensive with every occasion where such instrument or cause of action may be called in question. At least the statute lays down but one rule and that should be the guide." This case has been followed and approved by the Supreme Court ever since. [Leiber v. Leiber, 239 Mo. 1, 13, 143 S. W. 458; Goodale v. Evans, 263 Mo. 219, 229, 172 S. W. 270; Edmonds v. Scharff, 279 Mo. 78, 86, 213 S. W. 823.]

The contract by which it was claimed Wight has assigned his interest to plaintiff was the contract in issue and on trial, and without proof of that assignment plaintiff could not recover for that interest. [Chapman v. Dougherty, 87 Mo. 617; Leiber v. Leiber, 239 Mo. 1, 13, 143 S. W. 458.]

Plaintiff in this case was a party to the original contract of assignment between Wight and himself and was a party to the suit in which it became necessary to prove the execution of the contract of assignment, and under the authorities above cited, it is clear to us that plaintiff was not a competent witness to prove the assignment from Wight to him.

We think the following cases are also in harmony with our holding in this case. [Bishop v. Brittain Inv. Co., 229 Mo. 699, 721-25, 129 S. W. 668; Lewis v. Oliver, 22 Mo. App. 203; Cleveland v. Coulson, 99 Mo. App. 468, 73 S. W. 1105; McClure v. Clement, 161 Mo. App. 23, 143 S. W. 82.]

The record shows that plaintiff had secured an assignment from the heirs of Wight after his death. We do not think that could avail anything. There was no showing that Wight's estate had been administered upon and closed and all debts paid and unless that were done

the heirs had nothing to assign.  [Toler v. Judd, 262 Mo. 344, 171 S. W. 339.]

In view of another trial, we wish to call attention to the fact that in this record there is no showing that any witness testified as to the contents of the lost assignment from Wight to plaintiff.  If competent witnesses to prove this assignment are produced, they should testify as to the contents of the assignment.  Merely describing it as an assignment does not show its contents or furnish any proof that it was in fact an assignment.  Judgment reversed and cause remanded. *Bradley, J.,* concurs. *Farrington, J.,* dissents in separate opinion and asks that the case be certified to the Supreme Court which is accordingly done.

FARRINGTON, J. (dissinting).—I cannot concur in the holding of the majority opinion, because as I read the prohibition section, section 5410, Revised Statutes of Missouri, 1919, it in no way covers a case such as we have before us, and I think the ruling is in conflict with the object of the statutory rule as has been put by the Supreme Court in the case of Bishop v. Brittain Inv. Co., 229 Mo. l. c. 723, 129 S. W. 668: ''First, equality; second, to close the door to false swearing.'' In this case, to my mind the contract that is in issue and on trial is the one that the petition is based upon, and not the collateral contract thereto, the assignment of an interest in the contract to this plaintiff.

If this suit involved the question as to who owned such contract or the benefit flowing therefrom, both laying claim of title thereto, then under the numerous opinions of the Supreme Court cited in the majority opinion the plaintiff would not be permitted to testify to the source of his title when the assignor was dead, and in such case I agree that the statute should apply, but that is not the case here.

It is not the contention or cause of action in issue on trial between the parties here as to who has the title to

this contract sued on, but the question here between the parties is whether the contract sued on, as set out in the petition, should be enforced, and the question of whether plaintiff is the owner of the contract and has purchased the outstanding interest is purely a collateral matter to the contract or cause of action at issue and on trial. I, therefore, think that to allow plaintiff to testify in this cause in no way tends to put the defendant at any disadvantage by reason of plaintiff's assignor's lips being sealed, nor does permitting such testimony offer any special premium on perjury. The reason of the rule fails, and therefore such rule should not be applied. The majority opinion is in conflict with Bishop v. Brittain Inv. Co., 229 Mo. 699, 129 S. W. 668, and I ask that the cause be certified to the Supreme Court.